CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 0 3 2005

JOHN F. CORCORAN, CLERK
BY:
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| DEVON TURNER, | |
| Plaintiff, | Civil Action No. 5:04-cv-00053 |
| v. | MEMORANDUM OPINION |
| JO ANNE BARNHART, Commissioner of Social Security, | By: Samuel G. Wilson<br>United States District Judge |
| Defendant. | |

Plaintiff, Devon Turner, brings this action challenging the final decision of the Commissioner of Social Security denying Turner's claim for disability benefits under the Social Security Act. An Administrative Law Judge (ALJ) found that Turner is capable of a limited range of light work and a full range of sedentary work and that she is capable of performing jobs available in significant numbers in the national economy. The Commissioner of Social Security adopted that decision. The United States Magistrate Judge has filed a report pursuant to 28 U.S.C. § 636(b)(1)(B) recommending that the court reverse the decision and remand the case solely for the calculation of benefits. The Commissioner contends that substantial evidence supports her determination that Turner is not disabled and has objected to the Magistrate Judge's report. The court agrees with the Commissioner and affirms her decision.

## I.

Turner is twenty-four years old, and has a high school education, and has worked as a sewing machine operator, cook, and cashier. In April of 2001, Turner sought treatment for back pain. Turner had an x-ray, and the doctor who read it, Dr. Dennis G. Rohrer, reported that Turner had "very mild lumbar scoliosis . . . [and] [n]o other abnormalities." A follow-up MRI

performed the next month revealed similar findings: Dr. N. E. Adamson examined the MRI results and reported only a "very small central disc protrusion at the L4-5 level" and a "mild posterior disc bulge at the L5-S1 level." In June of the next year, Turner sought help from a rheumatologist, Dr. Wael N. Jarjour. Turner complained that what had started as lower back pain had progressively developed into diffuse body pain. Jarjour examined Turner and found her to be an "obese woman in no acute distress." He found her symptoms to be consistent with "fibromyalgia syndrome associated with depression," and he saw "[no] evidence to suggest inflammatory disease process or support the diagnosis of polymyalgia rheumatica." Jarjour recommended that Turner stop taking prednisone, and he referred her to a pain clinic. Jarjour also noted that Turner "denie[d] any symptoms suggestive of sleep apnea."

In September 2002, Turner underwent another back x-ray, and Dr. Ravi Giyanani, who reviewed her x-ray, found "mild disc narrowing at L4-5," a condition he said "may represent a component of degenerative disc disease . . . or can be seen with normal variation." The Virginia Department for Rehabilitative Services then referred Turner to Dr. F. A. Irani for a consultative examination. Dr. Irani reported that Turner's symptoms were consistent with fibromyalgia but that he suspected that her "major problem is all-emotional" and that he could find little "organic science to support [Turner's] claim of a total body pain."

In February 2003, Turner sought help at the Balint Pain Management Center, where Dr. Balint found her symptoms to be consistent with fibromyalgia, sleep apnea, obesity, spinal tear and bulge, mild scoliosis, and high blood pressure. Dr. Balint also completed a Medical Source Statement, stating that Turner was unable to perform even a range of sedentary activities; that she was able to stand or walk only for two hours in an eight-hour workday; that she was able to sit

2

only for two hours in an eight hour workday; that she was able to lift fifteen pounds; that she should only occasionally climb, balance, crouch, kneel, push or pull; that she should never stoop or crawl; that she was unable to reach in all directions; and that she should avoid exposure to workplace hazards, including unprotected heights, moving machinery, and vibration. Soon after, the State Agency commissioned a similar assessment, and the state consultant found that Turner was capable of performing a range of medium work activities.

Meanwhile, Turner had filed her disability claim on May 31, 2002, maintaining that she became disabled on February 4, 2002, from polymyalgia, fibromyalgia, a back disorder, and depression. The SSA denied the claim initially and on reconsideration. Turner then requested a hearing, which was held on November 10, 2003. A vocational expert (VE) testified at that hearing. The ALJ asked the VE whether there were positions available in significant numbers in the national economy for someone of Turner's age, education, experience, and residual capacity, as determined by the ALJ. The VE responded that someone in Turner's position could work as a laundry worker or grader/sorter. Turner also testified at the hearing, stating that her daily activities included caring for her toddler son, cleaning the house, doing laundry, and leaving her home four times a week to visit relatives and go to the store.

The ALJ ultimately granted little weight to either Dr. Balint's assessment of Turner's limitations or the State Agency reviewer's assessment. The ALJ found that Dr. Balint's assessment was contrary to the record and contradicted by Dr. Balint's own findings. However, the ALJ also found that Turner's "exertional limitations [were] somewhat more restricting than the State Agency's assessment." Thus, the ALJ reviewed the record and determined that Turner retained the capacity to perform a range of light exertional activities; that she is able to lift ten

3

pounds frequently and twenty pounds occasionally; that she is limited in her ability to walk and stand for prolonged periods; that she requires a sit-stand option at fifteen-minute intervals; that she can occasionally climb, balance, bend, stoop, kneel, crouch, squat, and crawl; that she should avoid workplace hazards; and that her ability to concentrate, persist at tasks, and keep pace is "moderate[ly] limit[ed]."

The ALJ found, among other things, that Turner suffers from the severe ailments of sleep apnea and fibromyalgia; that Turner's impairments do not meet or medically equal any of the impairments specifically set out in SSA regulations; that Turner is unable to perform any of her past work; that Turner has the residual functional capacity to perform "a significant range of light work"; that there are "a significant number of jobs in the national economy that [Turner] could perform"; and that Turner is not under a disability. The ALJ also found that Turner's allegations regarding her limitations were not "totally credible" because they conflicted with Turner's descriptions of her daily activities.

Turner appealed, and the court referred the matter to the Magistrate Judge, who found that the ALJ's decision was not supported by substantial evidence and recommended that the court reverse the ALJ's decision and remand the case only for calculation of benefits.

## II.

The record before the ALJ provided two contrasting accounts of Turner's health and residual capacity. By one account, Turner's limitations are not nearly as severe as she maintains. Clearly, the ALJ could have concluded that Dr Irani's opinion supported that account, given Dr. Irani's notation that he could find little "organic science to support [Turner's] claim of total body

4

pain."[1] Moreover, the ALJ could have rationally concluded that Turner's daily routine suggested that neither her fibromyalgia nor her sleep apnea were so severe as to prevent her from performing a range of light work and a full range of sedentary work. The second account, supported by Dr. Balint, stands in marked contrast to the first. Dr. Balint, who diagnosed Turner with fibromyalgia, sleep apnea, obesity, spinal tear and bulge, mild scoliosis, and high blood pressure, determined that Turner was incapable of performing even sedentary work. In the face of these conflicting accounts, it was the domain of the ALJ to assess credibility and to discern which account more closely mirrored reality. See Richardson v. Perales, 402 U.S. 389, 399 (1971) ("[In] the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict."). He did so, and we are not permitted to impose our own view of the evidence.

### III.

The ALJ assessed credibility in a reasonable fashion and articulated his reasoning. He discounted Dr. Balint's assessment of Turner's residual capacity, finding his opinion to be "unsupported by the evidence of record, and . . . contradicted by Dr. Balint's own reports, which reflect only moderate findings."[2] In light of this credibility determination and in light of all the evidence, the ALJ ultimately found that Turner was capable of a limited range of light work and

---

[1] The Magistrate Judge suggests that the ALJ over-read Dr. Irani's report and could not rely on it as evidence that Turner is not disabled. The court finds, however, that the ALJ could have read Dr. Irani's report precisely as he read it in light of Dr.Irani's notation that he found little "organic science to support [Turner's] claim of a total body pain ."

[2] While Dr. Balint's opinion would normally be entitled to controlling weight under the "treating physician rule," the ALJ was free to grant it less authority upon a sustainable finding that it was inconsistent with the other substantial evidence. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Here, the ALJ made such a finding.

a full range of sedentary work, and, after eliciting testimony from a VE through a proper hypothetical,[3] the ALJ determined that there were jobs available in the national economy for someone with Turner's limitations. These findings were supported by substantial evidence, and the ALJ arrived at them in a reasonable, proper fashion;[4] therefore, the court is constrained to affirm.

ENTER: This 3rd day of June 2005.

UNITED STATES DISTRICT JUDGE

---

[3]The Magistrate Judge suggests that the ALJ improperly relied upon the testimony of the VE to determine Turner's residual capacity. See Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989) (holding that the ALJ may only rely on the VE to determine whether there are jobs available in the national economy for someone with the claimant's limitations, not to determine the claimant's ability to work). However, a review of the ALJ's opinion and of the record reveals that the ALJ did not rely on the VE to determine Turner's residual capacity. At the time he questioned the VE, the ALJ had already determined a specific list of limitations for Turner (able to lift and carry 10 pounds or less frequently, able to lift and carry 20 pounds or less occasionally, unable to sit or walk for prolonged periods, etc.). The ALJ merely asked the VE to label Turner's residual capacity based on those limitations; he did not, however, entrust the VE with determining that capacity.

[4]The Magistrate Judge went so far as to suggest that the ALJ "was making an effort to engineer a result." The court notes its disagreement with this suggestion, which the court finds to be both unpersuasive and unhelpful. This court will not presume that other governmental agencies are not executing their responsibilities in a proper manner. Had the ALJ been interested in engineering a result, he could have adopted the residual capacity suggested by the State Agency reviewer, who suggested that Turner retained the capacity for a full range of medium work, or he could have relied on Dr. Jarjour's report to find that Turner does not suffer from sleep apnea. The ALJ did not take this route; rather, the court finds that he thoroughly examined the medical records before him and made supportable findings.

6

Case 5:04-cv-00053-SGW-BWC   Document 13   Filed 06/03/05   Page 6 of 6   Pageid#: 35